UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FIVE STAR DEVELOPMENT RESORT
COMMUNITIES, LLC,

                              Plaintiff,

    -against-

iSTAR RC PARADISE VALLEY LLC ,

                              Defendant.

No. 09 Civ. 2085 (LTS)

### MEMORANDUM OPINION AND ORDER

In this action arising out of a $112,025,000 Development Loan and Security Agreement, dated May 18, 2007 (the "Loan Agreement"), entered into by a borrower, plaintiff Five Star Development Resort Communities, LLC ("Plaintiff" or "Five Star"), and a lender, defendant iStar RC Paradise Valley LLC ("Defendant" or "iStar"), Five Star asserts various contract and tort claims under New York state law.  The Court has subject matter jurisdiction of the controversy pursuant to 28 U.S.C. § 1332.

Defendant's motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is now before the Court.  The Court has considered the parties' submissions thoroughly.  For the following reasons, the motion is denied in part and granted in part.

### BACKGROUND

The following facts are alleged in the Amended Complaint and are taken as true for purposes of this motion practice.  See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 189 (2d Cir. 2007).  Five Star is an Arizona limited liability company whose sole member is Five Star

Development Properties LLC, also an Arizona limited liability company. (Am. Compl. ¶¶ 9-10.) Plaintiff sought to develop a mixed use project anchored by a Ritz Carlton hotel (the "Project") on a 120-acre parcel of land in the adjacent towns of Paradise Valley, Arizona and Scottsdale, Arizona (the "Property"). (Am. Compl. ¶ 20.) iStar is a Delaware limited liability company whose membership interests are wholly-owned by iStar Financial, a publicly-traded real estate investment trust. (Am. Compl. ¶¶ 12-13.) The parties entered into a Loan Agreement (Am. Compl. Ex. A), in which Defendant, the Lender, agreed to lend Plaintiff, the Borrower, the principal amount of $112,025,000 (the "Loan"). (Am. Compl. ¶ 23.) The Loan enabled Five Star to purchase the Property and was intended to finance "horizontal construction" of the Property, including the acquisition of the necessary permits, until Five Star could obtain a construction loan and begin the development phase commonly known as "vertical construction." (Am. Compl. ¶¶ 23, 26.)

        iStar disbursed approximately $50 million on the closing date and was obligated to fund the remainder of the Loan pursuant to a series of requisitions ("Draw Requests") submitted by Five Star throughout the duration of the Loan. (Am. Compl. ¶ 25.) The Project fell behind schedule, in large measure due to the formation of a political action committee that opposed the Project and forced Five Star to prevail in a local referendum before obtaining the requisite Special Use Permit. Five Star kept iStar abreast of its efforts to obtain the Special Use Permit, in which it finally succeeded on November 24, 2008. (Am. Compl. ¶¶ 37-49.)

        The Loan Agreement sets conditions that Five Star must satisfy before iStar is obligated to grant Five Star's Draw Requests. iStar acceded to Five Star's first 18 such requests but did not honor Five Star's Draw Request 19, which was submitted on December 12, 2008, or Five Star's subsequent requests. (Am. Compl. ¶¶ 57-62.) Five Star had complied with all relevant conditions precedent and it was not in default on the Loan Agreement. (Am. Compl. ¶¶ 79, 87,

139.) iStar, however, informed Five Star that it believed that Five Star was in default, which would enable it to exercise its remedies under the Loan Agreement and foreclose on the Property. (Am. Compl. ¶¶ 1, 85-87.) Plaintiff has invested $55 million of equity into the Project. Plaintiff alleges that the Project is a unique investment and therefore it would have no adequate remedy at law if iStar were to wrongfully declare it in default and exercise its foreclosure remedy. (Am. Compl. ¶¶ 124, 134.)

Plaintiff asserts claims under New York law[1] for negligent misrepresentation (Count IV), breach of the covenant of good faith and fair dealing (Count V), breach of fiduciary duty (Count VI), breach of contract (Count VII), and tortious interference with prospective economic relations (Count VIII). Plaintiff seeks damages in excess of one billion dollars (Counts IV-VIII) as well as injunctive relief (Counts I-III, labeled "Declaratory Judgment," "Temporary and Permanent Injunctive Relief," and "Specific Performance").[2]

## DISCUSSION

In deciding a motion to dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw reasonable inferences in favor of the non-moving party." McCarthy, 482 F.3d at 191 (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

---

[1] The Loan Agreement contains a choice of law provision designating New York law as the applicable law, as well as a forum selection clause designating the state or federal courts in the state of New York as the appropriate fora for litigation of any disputes arising under the Loan Agreement. (Loan Agreement §§ 11.8, 11.10.)

[2] The Court granted Plaintiff's motion for a preliminary injunction on March 18, 2010. (Docket entry no. 60.)

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. This plausibility standard does not amount to a "probability requirement," but it calls for more than a "sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks and citation omitted).

### Count IV – Negligent Misrepresentation

"Under New York law, in order to state a claim for negligent misrepresentation, a plaintiff is required to allege that the speaker is bound to the other party 'by some relation or duty of care.'" JP Morgan Chase Bank v. Winnick, 350 F. Supp. 2d 393, 400 (quoting Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d Cir. 2003)). "In ordinary commercial contexts . . . it is imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." Id. (internal quotation marks and citation omitted). Five Star alleges that "iStar had a special relationship with Plaintiff based on trust and confidence" (Am. Compl. ¶ 145) and cites iStar's promotional materials that highlight the lender's specialized financial expertise (Am. Compl. 146). However, the Amended Complaint seeks only to hold iStar to the obligations it assumed in the Loan Agreement; Plaintiff has not alleged that iStar would be under any duty to Plaintiff absent the parties' contract. This contractual relationship does not establish the requisite "relation or duty of care," because "[i]f the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort." JP Morgan Chase Bank, 350 F. Supp. 2d at 401 (quoting Hargrave v. Oki Nursery, Inc., 636

F.2d 897, 899 (2d Cir. 1980)).  Accordingly, Defendant's motion to dismiss Plaintiff's negligent misrepresentation claim is granted.

Count V – Breach of the Covenant of Good Faith and Fair Dealing

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled."  Harris v. Provident Life & Accidental Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002).  This cause of action, which is premised upon the same facts as Five Star's breach of contract claim, is accordingly dismissed.

Count VI – Breach of Fiduciary Duty

"A fiduciary relationship requires 'great confidence and trust on the one part and a high degree of good faith on the other part." United States v. Chestman, 947 F.2d 551, 569 (2nd Cir. 1991) (internal citation omitted).  "The arm's-length relationship of parties in a business transaction is, if anything, antithetical to the notion that either would owe a fiduciary relationship to the other."  Dopp v. Teachers Ins. and Annuity Assn'n. of Am., No. 91 Civ. 1494, 1993 WL 404076, at *5 (S.D.N.Y. Oct. 1, 1993).  Furthermore, "[u]nder . . . New York law, the relationship between a lender and borrower is not fiduciary in nature."  See BHC Interim Funding, L.P. v. Finantra Capital, Inc., 283 F. Supp. 2d 968, 989 (S.D.N.Y. 2003).  Plaintiff's fiduciary duty claim relies on its assertions that Defendant controls Plaintiff's access to funds that are vital to the Project's completion, and Plaintiff reposed confidence in Defendant owing to its self-proclaimed expertise in real estate finance.  However, these allegations do not distinguish the parties' relationship from the arms-length contractual relationships that typically prevail in the context of commercial lending.  Plaintiff's breach of fiduciary duty claim therefore is dismissed for failure to allege the requisite fiduciary relationship.

Count VII – Breach of Contract

Plaintiff's breach of contract claim is the subject of the Court's March 18, 2010, Memorandum Opinion and Order Granting Motion for Preliminary Injunction. (Docket entry no. 60.) The parties dispute which, if any, of the materials submitted to the Court in connection with Plaintiff's preliminary injunction motion are properly before the Court in its consideration of Defendant's instant motion to dismiss the breach of contract claim. Consideration of materials extraneous to the Amended Complaint would generally necessitate conversion of the instant motion to a summary judgment motion pursuant to Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(b); Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 154-55 (2d. Cir. 2006). The parties have completed extensive discovery and iStar has represented to the Court that it is considering moving for summary judgment based on the complete record in the case once the instant motion is resolved. (See docket entry no. 59.) Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's breach of contract claim, without prejudice to any motion for summary judgment on this claim.

Count VIII – Tortious Interference with Prospective Economic Relations

"A defendant becomes liable for tortious interference with a plaintiff's business relations when four conditions are met: (1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." Goldhirsh Group, Inc. v. Alpert, 107 F.3d 105, 108-09 (2d Cir. 1997). Five Star premises its tortious interference claim on the allegation that iStar's breach of its obligations under the Loan Agreement compromised Five Star's ability to fulfill its obligations under various agreements into which it had entered with

various third parties related to the Project.  (Am. Compl. ¶¶ 176-77.)  However, the Amended Complaint does not allege that iStar interfered directly with any such third party, an omission that is fatal to Five Star's claim.  "It is clear . . . that under New York law, in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must interfere with the business relationship directly; that is, the defendant must direct some activities towards the third party."  Fonar Corp. v. Magnetic Resonance Plus, Inc., 957 F. Supp. 477, 482 (S.D.N.Y. 1997) (J. Motley).  Accordingly, Plaintiff's claim for tortious interference with prospective economic relations is dismissed.

### Counts I-III – Declaratory Judgment, Permanent Injunctive Relief, and Specific Performance Remedies

In Counts I-III, Plaintiff requests certain forms of relief – a declaratory judgment pursuant to 28 U.S.C. § 2201, temporary and permanent injunctive relief, and specific performance – that it believes it would be entitled to in the event that it were to prevail on any or all of the claims asserted in Counts IV-VIII.  Although Plaintiff labels these forms of relief as "counts," they are properly construed as remedies sought by Plaintiff.  See Equipoise PM LLC v. International Truck and Engine Corp., No. 05 C 6008, 2007 WL 2228621, *6 (N.D. Ill. 2007) ("Specific performance is really a remedy not a claim"); Jones v. ABN AMRO Mortg. Group, Inc., 551 F. Supp. 2d 400, 406 (E.D. Pa. 2008) ("Declaratory judgment is a remedy, not a count.").  The Court concludes that Plaintiff's factual allegations related to its entitlement to these remedies, including its allegations that the unique nature of its investment preclude the possibility of an adequate remedy at law, are "enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and accordingly Defendant's motion to dismiss these elements of the Amended Complaint is denied.

Request to Replead

In its memorandum of law in opposition to Defendant's motion to dismiss, Plaintiff requests an opportunity to file a second amended complaint in the event that the Court dismisses any element of the Amended Complaint. Plaintiff's request for leave to replead is denied, on the grounds that any attempt to replead Counts IV, V, and VI, would be futile in light of the contract that governs the parties' relationship, and any attempt to replead Count VIII would be futile because Plaintiff has not proffered, in connection with any of the extensive motion practice in this action, any facts indicative of interference by Defendant with any third party with which Plaintiff had an agreement. See Foman v. Davis, 371 U.S. 178, 182 (1962).

CONCLUSION

For the foregoing reasons, Plaintiff's claims for negligent misrepresentation (Count IV), breach of the covenant of good faith and fair dealing (Count V), breach of fiduciary duty (Count VI), and tortious interference with prospective economic relations (Count VIII) are dismissed. Defendant's motion is denied in all other respects. Plaintiff's request for leave to replead is denied. This Memorandum Opinion and Order resolves docket entry no. 42.

SO ORDERED.

Dated: New York, New York
July 6, 2010

/s/ LAURA TAYLOR SWAIN
United States District Judge