UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

FIVE STAR DEVELOPMENT RESORT
COMMUNITIES LLC,

        Plaintiff,

-v-                                    No. 09 Civ. 2085 (LTS)

iSTAR RC PARADISE VALLEY LLC,

        Defendant.

-----------------------------------------------------------x

## Memorandum Opinion and Order

In this action arising out of a $112,025,000 Development Loan and Security Agreement, dated May 18, 2007 (the "Loan Agreement" or "Agreement"), entered into by borrower Five Star Development Resort Communities, LLC ("Plaintiff" or "Five Star"), and lender iStar RC Paradise Valley LLC ("Defendant" or "iStar"), Five Star asserts a claim for breach of contract under New York state law. iStar counterclaims for breach of contract and fraud, and seeks a judgment declaring that Five Star is in default of the Loan Agreement, dissolution of a preliminary injunction imposed by the Court and a declaration that iStar is entitled to exercise its default remedies. The Court has subject matter jurisdiction of the controversy pursuant to 28 U.S.C. § 1332.

        Currently before the Court are two motions. Five Star has moved for an order precluding or striking defenses raised in the Answer and an order dismissing iStar's Amended Counterclaims. iStar has moved for summary judgment dismissing the Amended Complaint and granting judgment in iStar's favor on its First Amended Counterclaim. The Court has reviewed

thoroughly the parties' submissions and considered carefully the arguments raised therein. For the following reasons, both motions will be denied in their entirety.

## BACKGROUND

The background facts of this case are recounted in the Court's Memorandum Opinion and Order dated July 6, 2010, familiarity with which is assumed.

Under the Loan Agreement, iStar agreed to lend the principal amount of $112,025,000 to Five Star for the purchase and initial development of a parcel of land in the towns of Paradise Valley and Scottsdale, Arizona, for a multi-use project including a Ritz-Carlton hotel.

iStar disbursed approximately $50 million of the loan on the Agreement's closing date. Five Star then submitted 18 requests for additional partial disbursements of the loan, referred to in the Agreement as "development advances," and iStar approved each of the 18 requests. Five Star submitted its nineteenth disbursement request on December 12, 2008. After indicating initially that the nineteenth request had been approved, iStar refused to disburse any further development advances. Five Star made two more disbursement requests, and iStar continued to refuse to disburse any further funds.

The maturity date established by the Loan Agreement was May 18, 2010. Five Star did not repay the loan by the maturity date and the loan remains outstanding.

Five Star initiated this action by the filing of a complaint on March 6, 2009, followed by an Amended Complaint on May 14, 2009, asserting claims for, inter alia, negligent misrepresentation, breach of contract and tortious interference with prospective economic relations. The Court granted in part and denied in part iStar's motion to dismiss the Amended Complaint in its July 6, 2010, Memorandum Opinion and Order, and Five Star's only remaining

claim is for breach of contract.

The parties submitted a stipulation, which the Court endorsed, extending the time for iStar to file and serve its Answer until July 23, 2010. As contemplated by the stipulation, the Answer was filed, along with counterclaims, on July 23, 2010. iStar filed its Amended Counterclaims on October 14, 2010.

iStar's Second and Third Counterclaims assert causes of action for breach of contract and fraud in connection with a right of way referred to as Indian Bend. According to iStar, Five Star's principal Jerry Ayoub falsely claimed, during a telephone call to iStar, that Five Star was scheduled to appear before the Town of Paradise Valley Planning Commission on January 5, 2009, and that Five Star needed to complete its purchase of the Indian Bend right of way immediately in order to obtain approval of a plat. However, Five Star did not appear before the planning commission on January 5, 2009, and did not intend to appear before the commission on that day. Rather, Ayoub made these misrepresentations to extract more funding from iStar after iStar had refused to disburse more development advances. iStar disbursed $370,000 to Five Star for the purchase of the right of way and then, unbeknownst to iStar, Five Star assigned the $370,000 advance and Five Star's rights under the right of way purchase agreement to a newly created affiliate, which then used the advance to purchase the right of way.

DISCUSSION

I.   Five Star's Motion to Strike or Preclude Material from the Answer and Counterclaims

   A.   Pleading with Particularity that Conditions Precedent Were Not Met

In its Amended Complaint, Five Star alleges that it took certain actions prior to making draw requests. For instance, in paragraph 170, Five Star alleges that it "satisfied the requirements for funding of Development Advances to Draws [sic] Requests 19, 20 and 21." In

its approximately 6-page response to paragraph 170, iStar denies that allegation and identifies numerous provisions of the Loan Agreement that, according to iStar, constituted conditions precedent that Five Star failed to meet. In its motion papers, Five Star asserts that iStar's denials should be deemed admissions and the contentions of failure to meet conditions precedent should be stricken from the Answer, pursuant to Rules 9(c) and 12(f) of the Federal Rules of Civil Procedure, because iStar did not plead these matters with sufficient particularity.

Rule 9(c) of the Federal Rules of Civil Procedure provides that, "when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Fed. R. Civ. P. 9(c). Rule 12(f) of the Federal Rules of Civil Procedure provides that the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ. P. 12(f). "A motion to strike an affirmative defense under Rule 12(f) . . . for legal insufficiency is not favored and will not be granted 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'" William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1984), overruled on other grounds by Salcer v. Envicon Equities Corp., 478 U.S. 1015 (1986).

iStar's responses are sufficiently particularized. In its responses to Five Star's allegations that Five Star took particular actions, iStar denies that the identified actions were taken. In paragraph 170 of its Answer, which responds to Five Star's general allegation that it has satisfied the funding requirements in connection with three draw requests, iStar specifically identifies multiple conditions precedent that iStar contends were not satisfied. For example, iStar has alleged that "Five Star failed to satisfy the conditions precedent in Section 3.2(B)" of the Loan Agreement because Five Star failed to provide "true, correct and complete certified

copies of certain Material Contracts," copies of "executed estoppel certificates from all Parties to the Material Contracts," "a copy of each Architect's Agreement," "a copy of each Civil Engineer's Agreement" and other documents. Paragraph 170 spans seven pages of the Answer, listing multiple conditions precedent that iStar alleges were unmet. iStar's allegations are sufficiently particular, as they indicate each of the conditions precedent that iStar alleges were not met, and sufficiently detailed, as they are supported by allegations indicating how the conditions were not met. Accordingly, this aspect of Five Star's motion will be denied.

B. Timeliness of iStar's Answer

Five Star asserts that iStar's denials of conditions precedent are untimely, constitute "trial by ambush" and should not be permitted because Five Star received no notice of the denials until iStar filed its Answer.

The filing of a responsive pleading is governed in part by Rule 12 of the Federal Rules of Civil Procedure. Rule 12(a)(4) provides that, when a party serves a motion pursuant to Rule 12, responsive pleadings "must be served within 14 days after notice of the court's action" on the motion. Fed. R. Civ. P. 12(a)(4). Here, iStar filed a motion pursuant to Rule 12(b)(6) to dismiss the Amended Complaint, which the Court denied in part and granted in part on July 6, 2010. The parties then filed a stipulation, which the Court endorsed, extending iStar's time to file an Answer until July 23, 2010. iStar filed its Answer on July 23, 2010, as contemplated by the stipulation. The Answer was, therefore, timely.[1]

---

[1] In its Reply Memorandum, Five Star argues that the Answer should be deemed untimely because iStar failed to file the Answer when directed to do so by Magistrate Judge Peck in a March 22, 2010, Order. (Docket entry no. 61.) Although Five Star refers to the March 22 Order in its Opening Memorandum (Pl.'s Mem. p. 5-6), Five Star does not assert in its Opening Memorandum that the March 22 Order provides an adequate basis for finding the Answer untimely

Notwithstanding the timeliness of the Answer, Five Star asserts that iStar should be precluded from denying that certain conditions precedent were satisfied. Five Star argues that preclusion is warranted because (i) iStar failed to provide notice of all of its denials prior to filing the Answer; (ii) iStar's witnesses did not indicate during their depositions all of the conditions precedent that iStar would deny; (iii) iStar did not produce documents during discovery indicating all of the conditions it would deny; and (iv) iStar's preliminary pretrial statement did not indicate all of the conditions it would deny.

Five Star's arguments are unavailing. iStar was not required, prior to the filing of its Answer, to allege with particularity each of the conditions precedent that were not met. Furthermore, iStar's individual witnesses were not required to have comprehensive knowledge of every defense or factual contention that iStar would assert, and Five Star has not cited to any particular witness who improperly withheld information. Five Star has not cited to any document that iStar had in its possession but failed to produce during discovery. Finally, iStar was not required, when filing a preliminary pretrial statement pursuant to the Individual Rules of Practice of the undersigned, to list with particularity each of its defenses at the risk of forfeiture of those defenses. Because the Answer was timely and because Five Star has not asserted an adequate basis for precluding any part of the Answer, this aspect of Five Star's motion will be denied.

II. Five Star's Motion to Dismiss the Amended Counterclaims

    A. The Filing of the Amended Counterclaims Without the Answer

iStar filed a timely Answer with Counterclaims. Approximately three months

---

(See Pl.'s Mem. p. 12-16). Instead, the argument was raised for the first time in Five Star's Reply Memorandum and therefore will not be considered here.

later, iStar filed Amended Counterclaims. When filing its Amended Counterclaims, iStar did not amend its Answer and it did not re-file the original Answer with the Amended Counterclaims. Five Star argues that the Court should preclude iStar's Amended Counterclaims because they were not filed as part of the Answer.

Rule 13 of the Federal Rules of Civil Procedure provides that certain counterclaims are "compulsory" so they must be raised when filing responsive pleadings and other types of counterclaims are "permissive" so they may be raised in responsive pleadings. Fed R. Civ. P. 13. Rule 12(a) provides that a party must serve an answer to a counterclaim within 21 days after being served with the pleading that states the counterclaim. Extrapolating from these rules, Five Star argues that counterclaims cannot be asserted except as part of an answer—an assertion that iStar does not dispute—and further that, when a party files amended counterclaims, the amended counterclaims must be precluded unless the answer is re-filed simultaneously. Five Star's assertions are unsupported by case law, and the Court sees no reason to impose an unnecessary level of formalism in the absence of prejudice to either party and at the expense of judicial economy. This aspect of Five Star's motion is denied. In the interests of clarity, the Amended Counterclaims (docket entry no. 82) will be deemed to amend iStar's Amended Answer (docket entry no. 66) and together to constitute iStar's Amended Answer and Amended Counterclaims to the Amended Complaint.

B. The First Counterclaim is Not a "Mirror Image" of Count I

Five Star asserts that iStar's First Counterclaim should be dismissed, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, because the First Counterclaim is merely a "mirror image" of Count I of the Amended Complaint.

Ruke 12(f) provides that "the court may strike from a pleading . . . any redundant

. . . matter." Fed. R. Civ. P. 2(f). When a counterclaim is merely the "mirror image" of an opposing party's claim and the counterclaim serves no independent purpose, the counterclaim may be dismissed. Arista Records LLC v. Usenet.com, Inc., 07 Civ. 8822, 2008 WL 4974823, *3 (S.D.N.Y. Nov. 24, 2008). In determining whether a counterclaim is merely a mirror image of a claim, the court must consider whether a case or controversy would still exist in connection with the counterclaim if the court entered a judgment dismissing the opponent's claim. Id. (citing Larson v. General Motors Corp., 134 F.2d 450, 452 (2d Cir. 1943)).

> iStar's first counterclaim seeks a declaratory judgment that declares, in part, that:
>
> (i) Events of Default exist under the Loan Agreement and Five Star is in default of the Loan Agreement, and (ii) iStar is entitled to exercise its default remedies under the Loan Documents, including without limitation the Deed of Trust, the Letter of Credit and the Loan Agreement.

Count I of Five Star's Amended Complaint seeks a declaratory judgment that declares, in part, that:

> (i) Plaintiff is not in default of the Loan Agreement and iStar shall not exercise any default remedies; (ii) Defendant is barred from holding Plaintiff in default under the doctrines of waiver, estoppel, modification and acquiesence; [and] (iii) Defendant is barred from holding Plaintiff in default due to impossibility of performance.

In support of its claim that these provisions are mirror images of one another, Five Star cites to iStar's September 24, 2010, letter to the Court wherein iStar opined that "[t]he First Counterclaim is merely a request for declaratory relief that is the mirror-image of Count I of the amended complaint." (Def.'s Sept. 24, 2010, letter p.3, docket entry no. 76.)

iStar's letter notwithstanding, the Court finds that Claim I and the First Counterclaim are not simply mirror images of one another, as the Counterclaim also seeks a declaration that iStar is entitled to exercise default remedies under specified documents. In other

words, even if the Court denies Five Star's prayer for a declaration that iStar shall not exercise any default remedies, and thereby declines to preclude iStar from exercising default remedies, a case or controversy will still exist as to whether and to what extent default remedies can be exercised. iStar's Counterclaim, by contrast, seeks a determination of this issue. Thus, the claim and counterclaim are not mirror images of one another and this aspect of Five Star's motion will be denied.

        C.        <u>Timeliness of the Second and Third Counterclaims</u>

Five Star argues that iStar's Second and Third Counterclaims, based upon the purchase of the Indian Bend right of way, constitute "trial by ambush" because iStar did not provide notice of this claim prior to filing its Answer and that, therefore, Five Star should be precluded from asserting these counterclaims pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure.

Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial." Fed. R. Civ. P. 37(c)(1). Rule 26(a)(1) provides that each party must provide to the other parties at the outset of an action certain evidentiary material, information related to potential witnesses, information in connection with potential expert testimony, and a computation of each category of damages claimed by the disclosing party. Fed. R. Civ. P. 26(a)(1). Rule 26(e) provides that each party must, in a timely manner, supplement disclosures made under Rule 26(a) and supplement any response to interrogatories, requests for production and request for admission "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e).

Five Star has not cited to any information or material that iStar failed to produce

in violation of Rule 26(a). Nor has Five Star cited to any interrogatory, request for production or request for admission that iStar failed to supplement or any category of disclosures required under Ruler 26(a) that iStar failed to supplement in violation of Rule 26(e). As Five Star has failed to allege any acts that would violate Rule 26(a) or (e), preclusion under 37(c)(1) is not warranted.

Five Star cites to American Stock Exchange LLC v. Mopex, Inc., 215 F.R.D. 87 (S.D.N.Y. 2002), to support its assertion that the Second and Third Counterclaims should be dismissed. In American Stock Exchange, the court granted a motion to preclude assertions that the plaintiff had infringed defendant's patent. Id. at 88-89. In American Stock Exchange, the plaintiff had "aggressively sought to obtain full disclosure" of the defendant's case, including its patent claims and, in its motion papers, the plaintiff cited specific responses to interrogatories and responses to requests for admission that were not supplemented in a timely manner. Here, by contrast, Five Star has failed to identify any responses to interrogatories, responses to requests for admission, or other discovery material that is covered by Rule 37(c)(1)'s preclusion remedy and which has been withheld or not timely produced. Therefore, this aspect of Five Star's motion will be denied.

D. Adequacy of iStar's Third Counterclaim

Five Star argues that iStar's Third Counterclaim, for fraud, must be dismissed on the grounds that it is duplicative of the counterclaim for breach of contract, does not allege scienter or injury, and is not pleaded with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Five Star asserts the Third Counterclaim must also be dismissed because the alleged misrepresentations cited therein concern promises of future conduct.

"To satisfy the pleading standards of Rule 9(b), the complaint must: (1) specify

the statements that the plaintiff alleges were fraudulent; (2) identify the speaker; (3) indicate when and where the statements were made, and (4) explain why the statements were fraudulent." Cornwall v. Credit Suisse Group, 689 F. Supp. 2d 629, 635-36 (S.D.N.Y. 2010). Statements are specified sufficiently when the pleading alleges when the misstatement was made, by whom, and why it was fraudulent. Id. at 636. Malice, knowledge, and other levels of intent to defraud may be pleaded generally, but the plaintiff must allege facts "[giving] rise to a strong inference of fraudulent intent." Eternity Global Master Fund. Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 187 (2d Cir. 2004). The requisite scienter for all alleged acts of fraud is intent to defraud, knowledge of the falsity of the representation, or reckless disregard for the truth. Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957 (2d Cir. 1987).

To state a fraud claim made in connection with a breach of contract claim, New York law requires the claimant to: (1) demonstrate a legal duty separate from the duty to perform under the contract; (2) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (3) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages. Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 20 (2d Cir. 1996). "Under New York law, a failure to perform promises of future acts is not fraud unless there exists an intent not to comply with the promise at the time it was made." Murray v. Xerox Corp., 811 F.2d 118, 121 (2d Cir. 1987) (citing Chase Manhattan Bank N.A. v. Perla, 65 A.D.2d 207 (4th Dept. 1978)).

In its Third Counterclaim, iStar alleges that Five Star's principal Jerry Ayoub, during a telephone call to iStar, falsely claimed that Five Star was scheduled to appear before the Town of Paradise Valley Planning Commission on January 5, 2009, and that Five Star needed to complete the right of way purchase immediately in order to obtain approval of a plat. However,

Five Star did not appear before the planning commission on January 5, 2009, and Five Star assigned its rights under the right of way purchase agreement to a newly created affiliate and used loan proceeds to fund the affiliate's purchase of the right of way. These allegations adequately state the who, what, when and where of the facts underlying iStar's counterclaim, as required by Rule 9(b). iStar has also alleged facts giving rise to a strong inference of fraudulent intent, specifically, that Five Star made the alleged misrepresentations after a dispute arose between the parties regarding draw request 19 and when the maturity date on the loan was only five months away, at which time Five Star would have been obligated to repay the loan or iStar could exercise default options. Thus, because of its alleged misrepresentation, Five Star was able to extract one last, large disbursement of funds before the loan's maturity date. Furthermore, the allegation that this disbursement was made satisfies the injury element of the fraud claim, as iStar asserts that it was not obligated to disburse the funds and would not have disbursed them but for the misrepresentations.

      iStar's fraud counterclaim alleges misrepresentations as to whether Five Star had secured an appointment before the planning commission and whether exigent circumstances existed that necessitated an immediate purchase of the right of way. These are questions of present existing fact. Moreover, these misrepresentations are collateral to Five Star's contractual promises. According to iStar's interpretation of the Loan Agreement, iStar was obligated to disburse funds pursuant to section 3.2 of the Agreement only after all conditions precedent were satisfied but, by making allegedly false representations, Five Star was able to procure from iStar a sum of money that iStar was not yet contractually obligated to disburse. For these reasons, this

aspect of Five Star's motion will be denied.[2]

III.   iStar's Motion for Summary Judgment

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (the moving party bears the burden of establishing that there is no genuine issue of material fact). The moving party can satisfy its burden by pointing out that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248).

A.   Section 3.2 of the Loan Agreement and the Conditions Precedent

Five Star asserts that iStar's motion for summary judgment must be denied because section 3.2 of the Loan Agreement, containing various conditions precedent, is ambiguous as to when those conditions must be met and whether all of the conditions must be met before iStar is obligated to disburse any development advances pursuant to section 3.2. For

---

[2] In footnote 11 of its memorandum of law, Five Star asserts that, even if iStar properly asserted counterclaims for breach of contract and fraud, neither claim can go forward because the third party to whom Five Star assigned its rights under the right-of-way purchase agreement is an indispensable party. As iStar's prayer for relief is primarily for damages and does not include a prayer for any interest in the Indian Bend right of way, Five Star has not demonstrated a basis for finding that the third party to whom it assigned certain rights is an indispensable party.

the following reasons, the Court agrees.

Under New York law, "the initial interpretation of a contract is a matter of law for the court to decide." K. Bell & Assoc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996). "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." Alexander & Alexander Serv., Inc. v. Certain Underwriters at Lloyd's, London, 136 F.3d 82, 86 (2d Cir. 1998). Contract terms are ambiguous if they suggest

> more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997). When a contract is not ambiguous, the court "should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence." Alexander, 136 F.3d at 86. On the other hand, when a contract is ambiguous, the court should consider extrinsic evidence, in which case disputed issues of fact will usually preclude deciding the case on summary judgment. See Seiden Assocs. v. ANC Holdings, Inc., 959 F.2d 425, 428-29 (2d Cir. 1992).

iStar argues that the Loan Agreement imposes an unambiguous requirement that all of the conditions precedent listed in section 3.2 must be fulfilled before iStar is obligated to disburse development advances. However, some aspects of the Agreement suggest that Five Star became entitled to development advances on a rolling basis as different conditions were satisfied in connection with different phases of construction. For instance, section 3.2 refers repeatedly to "development advances" in the plural, suggesting that multiple advances would be paid on an ongoing basis, rather than one single development advance to be paid after all conditions precedent were satisfied. Furthermore, the introductory sentence of section 3.2 states

that

> [t]he obligation of Lender to disburse proceeds of the Loan for Hard Costs and Soft Costs related to the Completion of Construction is subject to satisfaction of the conditions precedent <u>to such subsequent advances</u> set forth below in this Section 3.2.

(Loan Agreement § 3.2 (emphasis added).) Here, the phrase "to such subsequent advances" modifies "conditions precedent," suggesting that some conditions precedent apply to some development advances and not to others. To interpret the sentence otherwise—that is, to find that all of the conditions must be fulfilled before iStar is obligated to disburse any development advance pursuant to section 3.2—would render the modifying phrase meaningless, which would be contrary to the canon of construction, applicable under New York law, that every clause and word of a contract should be given meaning. See <u>Patrolmen's Benev. Assoc. of the City of New York v. City of New York</u>, 46 A.D.3d 378, 380 (N.Y. App. Div. 2007) (citing <u>Travelers Cas. & Sur. Co. v. Certain Underwriters at Lloyd's of London</u>, 96 N.Y.2d 583 (2001)) (applying the canon of construction that every word and clause of a contract should be given meaning). Even the phrase "development advances" suggests that the disbursements are made <u>in advance</u> of the particular phase of construction that they are intended to support.

On the other hand, other parts of section 3.2 support iStar's interpretation. For instance, section 3.2 does not reference a timetable designating when each condition becomes due or connecting each condition to a specific phase of construction, and the very idea of a condition <u>precedent</u> is that the condition will be fulfilled before some conditional event. In short, the Loan Agreement is ambiguous as to whether Five Star was required to fulfill all of section 3.2's conditions before being entitled to development advances under that section and, therefore, this aspect of the motion for summary judgment will be denied.

B.  Section 9 of the Loan Agreement and Events of Default

iStar asserts that summary judgment should be granted in its favor because certain Events of Default occurred under sections 9.1(W) and 9.1(B) of the Loan Agreement. Five Star responds that the Loan Agreement requires iStar to provide Five Star with notice before declaring an Event of Default and that iStar failed to provide such notice.

Section 9.1(D) of the Loan Agreement provides that an Event of Default occurs when:

> A default by Borrower shall occur in the performance of or compliance with any term contained in this Agreement or the other Loan Documents and such default is not remedied or waived within thirty (30) days after receipt by Borrower of notice from Lender of such default (other than occurrences described in other provisions of this Section 9.1 for which a different grace period or cure period is specified or which constitute immediate Events of Default) . . . .

(Loan Agreement § 9.1(D).) Section 9.1(D) also provides that, under special circumstances, the borrower is entitled to 90 days to cure the default. (Id.)

Five Star alleges that it did not receive notice as required by section 9.1(D), and argues that the sections of the Loan Agreement that iStar has cited as providing the basis for Five Star's alleged Events of Default, sections 9.1(W) and 9.1(B), do not specify that they constitute "immediate Events of Default." Five Star contends that, therefore, iStar was not permitted to rely on these alleged Events of Default as grounds for withholding the development advances sought in disbursement requests 19, 20 and 21, and that iStar is not now permitted to invoke these Events of Default as bases for declaring Five Star in default of the Loan Agreement.

In its Reply memorandum, iStar responds that the cited Events of Default arise under subsections of section 9.1 that do not require notice. iStar does not, however, explain the basis for this assertion. The language used in section 9.1(D) suggests that the notice requirement

contained therein is not limited to Events of Default arising under section 9.1(D) and that it may apply to other provisions of section 9.1. Section 9.1(D) expressly excludes "provisions of this Section 9.1 for which a different grace period or cure period is specified or which constitute immediate Events of Default." The exclusion of such provisions suggests that other provisions of section 9.1 are included within the scope of the notice requirement. At the very least, the contract language is ambiguous. As iStar has failed to satisfy its burden of demonstrating that no rational jury could return a verdict in Five Star's favor, the motion for summary judgment will be denied.

## CONCLUSION

For the foregoing reasons, Five Star's motion to preclude or strike defenses in the Answer and to dismiss the Counterclaims is denied in its entirety, and iStar's motion for summary judgment is denied in its entirety. iStar's Amended Counterclaims (docket entry no. 82) are deemed to amend iStar's Answer (docket entry no. 66) and together with that answer to constitute iStar's Amended Answer and Amended Counterclaims to the Amended Complaint.

The parties are directed to meet promptly with Magistrate Judge Peck to discuss settlement.

This Memorandum Order resolves docket entry numbers 85 and 89.

SO ORDERED.

Dated: New York, New York
March 26, 2012

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge